## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| HENRY KURZ CONSULTING GMBH | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| CONFIGAIR LLC, DANIEL NAUS, NIZWER | ) | **JURY TRIAL DEMANDED** |
| HUSAIN, DUNG NGUYEN, MCLAREN | ) | |
| AUTOMOTIVE, INC., MAAX BATH INC., and | ) | |
| DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## COMPLAINT

Plaintiff, Henry Kurz Consulting GmbH ("HKC"), by and through its undersigned attorneys, for its Complaint against ConfigAir LLC ("ConfigAir"), Daniel Naus, Nizwer Husain, Dung Nguyen, McLaren Automotive, Inc. ("McLaren"), Maax Bath Inc. ("Maax"), and Does 1-10 (collectively, "Defendants") hereby alleges as follows:

## NATURE OF THIS ACTION

1. This is a civil action for (i) willful copyright infringement in violation of the Copyright Act of 1976, 17 U.S.C. §101, *et seq.*, (ii) vicarious and/or contributory copyright infringement under federal common law, (iii) slander of title/commercial disparagement under Connecticut common law, (iv) fraudulent misrepresentation under Connecticut common law; (v) tortious interference with business expectancy under Connecticut common law, and (vi) unfair and deceptive trade practices in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §42-110, *et seq.*.

## THE PARTIES

2.      HKC is a German limited liability company with its principal place of business located at Feuerbacher Weg 206, 70469 Stuttgart, Germany.

3.      Upon information and belief, ConfigAir is a limited liability company organized under the laws of the State of Connecticut with its principal place of business located at 65 Seaside Avenue, Unit 2, Stamford, Connecticut 06902.

4.      Upon information and belief, Daniel Naus is a member, officer and member of the Board of Directors of ConfigAir and a resident of the State of Connecticut

5.      Upon information and belief, Nizwer Husain is a member, officer and member of the Board of Directors of ConfigAir and a resident of the State of Tennessee.

6.      Upon information and belief, Dung Nguyen is a member, officer and member of the Board of Directors of ConfiAir and a resident of the State of California.

7.      Upon information and belief, McLaren is a corporation organized under the laws of the State of Delaware with its principal place of business located at 750 Third Avenue, Suite 2400, New York, New York 10017 and a registered agent located at 50 Weston Street, Hartford, Connecticut 06120.

8.      Upon information and belief, Maax is a corporation organized under the laws of Canada with its principal place of business located at 160, St-Joseph Blvd., Lachine, Quebec, H8S 2L3, Canada.

9.      Defendant Does 1-10, inclusive, are other parties not yet identified who have infringed HKC's copyrights, have contributed to the infringement of HKC's copyrights, or have engaged in one or more of the wrongful practices alleged herein, including but not limited to customers of ConfigAir who have published and distributed the software at issue in this case

without HKC's knowledge or consent.   The true names, whether corporate, individual or otherwise, of Defendant Does 1-10, inclusive, are presently unknown to HKC, which therefore sues said Defendants by such fictitious names, and will seek leave to amend this Complaint to show their true names and capacities when same have been ascertained.

10.     Upon information and belief, at all times relevant hereto, each of the Defendants was the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants and was at all times acting within the scope of such agency, affiliation, alter-ego relationship and/or employment; and actively participated in or subsequently ratified and adopted, or both, each and all of the acts or conduct alleged, with full knowledge of all the facts and circumstances, including, but not limited to, full knowledge of each and every violation of HKC's rights and the damages to HKC proximately caused thereby.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§1331, 1332, 1338(a) and (b), and 1367.

12.     This Court has personal jurisdiction over Defendants because: (1) ConfigAir and Naus are residents of the State of Connecticut; (2) Husain's and Nguyen's principal place of business is located in the State of Connecticut; (3) Defendants transact business in and with the State of Connecticut; and (4) Defendants have committed, and continue to commit, acts of infringement in the State of Connecticut through solicitation of business and tortious conduct in the State.

13.     Venue in this judicial district is proper pursuant to 28 U.S.C. §§1391(b) and (c) and 1400(a) in that this is the judicial district in which a substantial part of the acts and omission giving rise to the claims occurred.

## FACTS COMMON TO ALL COUNTS

**HKC's Copyrighted Software**

14.     In or about 2003, Henry Kurz, a German citizen and domiciliary, began creating configurator and visualization software, comprised of four component computer programs, which he titled (a) CAL, a/k/a Configurator Abstraction Layer ("CAL"); (b) CALServer, a/k/a Configurator Abstraction Layer Server or CALWSServer ("CALServer"); (c) CALVisualization, a/k/a Configurator Abstraction Layer Visualization or Visualization Engine ("CALVisualization); and (d) CALUi, a/k/a Configurator Abstraction Layer User Interface or Visualization UI or WebConf ("CALUi") (collectively, the "Software").

15.     Kurz completed development of the CAL program in 2004.

16.     He completed development of the CALServer and CALVisualization programs in 2006.

17.     He completed development of the CALUi program in 2010.

18.     The computer programs comprising the Software are original works of authorship and copyrightable subject matter under the laws of the United States, 17 U.S.C. § 101, *et seq*.

19.     As the sole creator and author of the Software, Kurz was the exclusive owner of all right, title and interest therein.

20.     On or about December 1, 2010, Kurz organized and registered HKC at the court in Stuttgart, Germany, under the registration number HRB 735665.  Kurz has been the sole owner and manager of HKC since its registration.

21.     On or about December 2, 2010, Kurz transferred exclusive rights in the copyright in the Software to HKC by executing a Software Transfer Agreement written in German.  A true

and correct copy of the Software Transfer Agreement between Kurz and HKC, and a certified English translation thereof, is attached hereto at Exhibit A and incorporated by reference.

22.     Thereafter, HKC registered each of the four component computer programs comprising the Software with the United States Copyright Office.

23.     HKC complied in all respects with the requirements of the Copyright Act and received from the Register of Copyrights a Certificate of Registration bearing the number TX8-544-833 (the "'833 Registration") for the CAL program.  A true and correct copy of the '833 Registration is attached hereto at Exhibit B and incorporated by reference.

24.     HKC complied in all respects with the requirements of the Copyright Act and received from the Register of Copyrights a Certificate of Registration bearing the number TX8-539-598 (the "'598 Registration") for the CALServer program.  A true and correct copy of the '598 Registration is attached hereto at Exhibit C and incorporated by reference.

25.     HKC complied in all respects with the requirements of the Copyright Act and received from the Register of Copyrights a Certificate of Registration bearing the number TX8-539-596 (the "'596 Registration") for the CALVisualization program.  A true and correct copy of the '596 Registration is attached hereto at Exhibit D and incorporated by reference.

26.     HKC complied in all respects with the requirements of the Copyright Act and received from the Register of Copyrights a Certificate of Registration bearing the number TX8-544-841 (the "'841 Registration") for the CALUi program.  A true and correct copy of the '841 Registration is attached hereto at Exhibit E and incorporated by reference.

**Defendants' Wrongful Conduct**

27.     Prior to the acts complained of herein, Kurz provided a copy of the Software to eSpline, LLC ("eSpline"), of which Naus was the COO at the time.

28.     With HKC's permission, eSpline began marketing the Software to third parties in exchange for a commission on licensing revenue that it generated.

29.     In or about December 21, 2010, Kurz, Naus, Husain and Nguyen formed ConfigAir with the intention of creating and developing configuration software for mobile devices—software that was separate and distinct from HKC's Software.

30.     From its founding, Kurz was a member of ConfigAir and served on its Board of Directors and as its Vice President and Chief Technology Officer ("CTO").

31.     As CTO of ConfigAir, Kurz was responsible for overseeing and supervising all software development.

32.     Concurrent with his involvement with ConfigAir, Kurz continued to develop the Software.

33.     Pursuant to Section 2(4) of the Software Transfer Agreement, all developments and edits to the Software were automatically licensed to HKC under the same terms and conditions.

34.     In or about 2012, Kurz determined, and all of the members of ConfigAir agreed, that the mobile device software would not be a viable product, and ConfigAir discontinued development of the mobile device software.

35.     Upon information and belief, prior to the acts complained of herein, Naus transferred a copy of the Software from eSpline's server to ConfigAir's server.

36.     With HKC's permission and Kurz's oversight, ConfigAir began licensing and distributing the Software to third parties in or about 2013.

37.     ConfigAir did not compensate HKC in consideration for ConfigAir's licensing or distribution of the Software at any time.

38.     Upon information and belief, on or about July 9, 2014, Naus organized ConfigAir s.r.o., a Czech limited liability company wholly owned by Naus and Ales Restak, a Czech national (the "Czech Entity").

39.     At the time, Naus falsely stated to Kurz that the Czech Entity was wholly owned by ConfigAir and Restak and that ConfigAir held a majority interest in the Czech Entity.

40.     Naus knew these statements were false at the time he made them.

41.     Naus failed to disclose to HKC that he held a ninety percent (90%) ownership interest in the Czech Entity.

42.     Naus falsely stated that ConfigAir owned a majority interest in the Czech Entity and fraudulently concealed his own ownership interest in the Czech Entity to induce HKC to allow the Czech Entity to develop the Software.

43.     Upon information and belief, in or about July 2014, Naus distributed a copy of the Software to the Czech Entity.

44.     In reliance on Naus's false statements regarding the ownership of the Czech Entity, HKC initially permitted the Czech Entity to copy, alter and/or modify the Software, provided Kurz exercised oversight over the development process.

45.     Upon information and belief, Naus directed employees of the Czech Entity to copy, alter and/or modify the Software without HKC's authorization or Kurz's oversight.

46.     As a result of Naus's unauthorized interference with the development of the Software, in or about 2015, Kurz reminded the other members of ConfigAir that, if he were removed from ConfigAir, ConfigAir would no longer be authorized to exploit the Software.

47.     In or about September 2017, Naus prohibited Kurz from overseeing or directing development of the Software.

48.     On or about October 18, 2017, Naus, Husain and Nguyen voted in favor of removing Kurz as Vice President and CTO of ConfigAir.

49.     Upon information and belief, on or about October 21, 2017, Naus, Husain and Nguyen voted in favor of removing Kurz as a member of the Board of Directors of ConfigAir.

50.     On or about October 31, 2017, Kurz, on behalf of HKC, notified ConfigAir that, as a result of Kurz's removal from the Board of Directors and as Vice President and CTO of ConfigAir, ConfigAir was no longer authorized to exploit the Software.

51.     Upon information and belief, thereafter, Naus, Husain and Nguyen have actively and knowingly caused ConfigAir to copy, publicly display, distribute, license and sell the Software, or substantially similar versions thereof, to third parties, including but not limited to McLaren, Maax, and the Doe Defendants, for their own commercial gain without HKC's authorization.

52.     Upon information and belief, in November 2017, Naus directed the employees of the Czech Entity to translate the Software into a different computer language that nevertheless generates screen displays that are substantially similar to those displayed by the Software.

53.     Upon information and belief, at Naus's direction and without HKC's knowledge or authorization, the Czech Entity translated HKC's copyrighted CAL program and titled the translated program the Universal Configurator Application or UCA.

54.     Upon information and belief, at Naus's direction and without HKC's knowledge or authorization, the Czech Entity translated HKC's copyrighted CALServer program and titled the translated program the UCAServer.

55.     Upon information and belief, at Naus's direction and without HKC's knowledge or authorization, the Czech Entity translated HKC's copyrighted CALVisualization program and titled the translated program the Big Picture.

56.     Upon information and belief, at Naus's direction and without HKC's knowledge or authorization, the Czech Entity translated HKC's copyrighted CALUi program and titled the translated program the React User Interface.

57.     Upon information and belief, Naus purportedly transferred ownership of the translated Software to the Czech Entity without HKC's knowledge or authorization.

58.     In or about December 2017, Kurz discovered that ConfigAir does not own any interest in the Czech Entity and that it is, in fact, wholly owned by Naus and Restak.

59.     Upon information and belief, Naus, Husain and Nguyen intend to cause ConfigAir to copy, publicly display, distribute, license and/or sell the translated Software to third parties for their own commercial gain without HKC's authorization.

60.     On or about December 19, 2017, HKC sent letters to several third-party users of the Software notifying them that ConfigAir is no longer authorized to license the Software to them and that, in the event ConfigAir creates software derived from the Software without HKC's authorization, their use of such unauthorized derivative software constitutes infringement of HKC's copyright in the Software.  True and correct copies of letters from HKC to McLaren and Maax, ConfigAir customers and licensees of the Software, is attached hereto at Exhibit F and incorporated by reference.

61.     Upon information and belief, on or about December 29, 2017, Naus, Husain and Nguyen actively and knowingly caused ConfigAir's counsel to send letters to several third-party users of the Software falsely stating that the code underlying the Software is ConfigAir's

"property." A true and correct copy of a letter from ConfigAir's counsel to It-motive AG, a ConfigAir customer and licensee of the Software, is attached hereto at Exhibit G and incorporated by reference.

62. This statement was false, and ConfigAir, Naus, Husain and Nguyen knew that this statement was false, when it was made.

63. Upon information and belief, ConfigAir, Naus, Husain and Nguyen intended for the third-party users to rely on the false statements and continue to pay ConfigAir for their use of the Software, or software derived from the Software, without HKC's authorization and without compensating HKC.

64. Upon information and belief, despite receiving actual notice of HKC's ownership of copyright in the Software, and in reliance on ConfigAir's false statements, McLaren, Maax, and Does 1-10 have continued to reproduce, distribute, publicly display, and license copies of the Software, or software derived from the Software, and have continued to pay ConfigAir for such use, without HKC's authorization and without compensating HKC.

**Count I**
**(Copyright Infringement-Against All Defendants)**

65. HKC repeats, realleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs of this Complaint.

66. At all relevant times, HKC has been and is the owner of all right, title and interest in and to the Software.

67. Upon information and belief, the Defendants, and each of them, had access to the Software.

68.     Upon information and belief, ConfigAir has an ongoing business relationship with McLaren, Maax, the Doe Defendants, and each of them, and supplied unauthorized copies of the Software to them.

69.     Upon information and belief, Defendants, and each of them, infringed HKC's copyright in the Software by copying, publicly displaying, distributing, licensing and/or selling unauthorized copies of the Software, or derivative works based thereon, without HKC's authorization.

70.     Defendants' infringement of HKC's rights in and to each of the copyrighted computer programs comprising the Software constitutes a separate and distinct act of infringement.

71.     Upon information and belief, Defendants, and each of them, have committed acts of copyright infringement, as alleged above, which were willful, intentional and malicious.

72.     Defendants' conduct does not constitute fair use of the Software where the purpose is of a commercial nature.

73.     Due to Defendants' acts of infringement, HKC has suffered substantial damages to its business in an amount to be established at trial.

74.     HKC is entitled to an injunction restraining Defendants, and each of them, their officers, agents, servants, employees and attorneys, and all others acting in concert or participation with them, from engaging in any further acts in violation of the Copyright Act.

**Count II**
**(Vicarious and/or Contributory Copyright Infringement-Against All Defendants)**

75.     HKC repeats, realleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs of this Complaint.

76.     Upon information and belief, Defendants, knowingly induced, participated in, aided and abetted in and profited from the illegal copying, publicly display, distribution, licensing and sale of the Software, or derivative works based thereon, as alleged herein.

77.     Upon information and belief, Defendants, and each of them, are vicariously liable for the infringement alleged herein because they had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct.

78.     Defendants' infringement of HKC's rights in and to each of the copyrighted computer programs each constitutes a separate and distinct act of contributory and vicarious infringement.

79.     Upon information and belief, Defendants, and each of them, have committed acts of contributory and vicarious infringement, as alleged above, which were willful, intentional and malicious.

80.     Defendants' conduct does not constitute fair use of the Software where the purpose is of a commercial nature.

81.     By reason of the Defendants', and each of their, acts of contributory and vicarious infringement as alleged above, HKC has suffered and will continue to suffer substantial damages to its business in an amount to be established at trial.

82.     Due to Defendants', and each of their, acts of contributory and vicarious infringement as alleged herein, Defendants, and each of the, have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the Software.  As such, HKC is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of the Software, in an amount to be established at trial.

83.     HKC is entitled to an injunction restraining Defendants, and each of them, their officers, agents, servants, employees and attorneys, and all others acting in concert or participation with them, from engaging in any further acts in violation of the Copyright Act.

**Count III**
**(Slander of Title/Commercial Disparagement-Against ConfigAir, Naus, Husain and Nguyen)**

84.     HKC repeats, realleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs of this Complaint.

85.     Naus, Husain and Nguyen actively and knowingly caused ConfigAir's counsel to falsely state to third-party users of the Software that the code underlying the Software is ConfigAir's "property."

86.     ConfigAir, Naus, Husain and Nguyen knew or should have known that HKC was the copyright owner of the Software.

87.     ConfigAir's statements were false, and constitute false statements derogatory to HKC's title in and to the Software.

88.     ConfigAir made these statements with the intention of disparaging and slandering HKC's right, title and interest in and to the Software.

89.     Upon information and belief, ConfigAir's acts of purposefully making these statements to third-party users of the Software were malicious and were intended to impugn the integrity of HKC, diminish the value of HKC's property in the eyes of its users and to slander HKC's title in and to the Software.

90.     Upon information and belief, ConfigAir's actions have, in fact, impugned the integrity of HKC, diminished the value of HKC's property, and slandered HKC's title in and to the Software.

91.     ConfigAir's statements constitute a reckless indifference to HKC's rights and an intentional and wanton violation of those rights.

92.     As a direct and proximate result of ConfigAir's conduct, HKC has been deprived of licensing revenue from such third-party users of the Software.

93.     As a direct and proximate result of ConfigAir's conduct, HKC has suffered damages in an amount to be proven at trial, but which HKC is informed and believes, and on that basis alleges, exceeds the jurisdictional minimum of this Court.

94.     Furthermore, upon information and belief, ConfigAir's conduct as hereinabove alleged was not only knowingly false, but was also wanton and malicious.  Accordingly, HKC is entitled to an award of punitive damages.

## Count IV
### (Fraudulent Misrepresentation-Against Naus)

95.     HKC repeats, realleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs of this Complaint.

96.     Naus falsely represented to HKC that Czech Entity was wholly owned by ConfigAir and Restak and that ConfigAir owned a majority interest in it.

97.     Naus failed to disclose that the Czech Entity was, in fact, wholly owned by Naus and Restak and ConfigAir did not own any interest in it.

98.     Naus knew the representation was false when he made it.

99.     Naus made the representation with the intention of inducing HKC to permit the Czech Entity to adapt, modify and change the Software without benefit of an agreement protecting ownership interest in the adapted, modified and/or changed Software.

100.    HKC reasonably relied on the false representation when it permitted the Czech Entity to adapt, modify and change the Software without benefit of an agreement protecting HKC's ownership interest in the adapted, modified and/or changed Software.

101.    Naus's representation constitutes a reckless indifference to HKC's rights and an intentional and wanton violation of those rights.

102.    As a direct and proximate result of Naus's conduct, HKC has been injured by its loss of control over the rights in the Software.

103.    HKC has suffered damages in an amount to be proven at trial, but which HKC is informed and believes, and on that basis alleges, exceeds the jurisdictional minimum of this Court.

104.    Furthermore, upon information and belief, ConfigAir's conduct as hereinabove alleged was not only knowingly false, but was also wanton and malicious.  HKC is also entitled to an award of punitive damages.

## <u>Count V</u>
### (Fraudulent Misrepresentation-Against ConfigAir, Naus, Husain and Nguyen)

105.    HKC repeats, realleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs of this Complaint.

106.    Naus, Husain and Nguyen actively and knowingly caused ConfigAir's counsel to falsely represent to third-party users of the Software that the code underlying the Software is ConfigAir's "property."

107.    ConfigAir, Naus, Husain and Nguyen knew the representation was false when made.

108.    Naus, Husain and Nguyen caused ConfigAir's counsel to make the statement with the intention of inducing the third-party users to continue using the Software without HKC's authorization, thus depriving HKC of licensing revenue.

109.    Naus's representation constitutes a reckless indifference to HKC's rights and an intentional and wanton violation of those rights.

110.    Upon information and belief, as a result of the statement, the third-party users have continued to use the Software without HKC's authorization and without paying HKC a licensing fee.

111.    As a direct and proximate result of ConfigAir's conduct, HKC has suffered damages in an amount to be proven at trial, but which HKC is informed and believes, and on that basis alleges, exceeds the jurisdictional minimum of this Court.

112.    Furthermore, upon information and belief, the conduct as hereinabove alleged was not only knowingly false, but was also wanton and malicious.  Accordingly, HKC is also entitled to an award of punitive damages.

<u>**Count VI**</u>
<u>**(Tortious Interference with Business Expectancy-Against ConfigAir, Naus, Husain and Nguyen)**</u>

113.    HKC repeats, realleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs of this Complaint.

114.    ConfigAir, Naus, Husain and Nguyen knew that certain customers, including but not limited to McLaren, Maax, and the Doe Defendants, had been using the Software pursuant to a license previously authorized by HKC.

115.    They further knew that HKC had revoked its authorization for ConfigAir to license the Software, and therefore the customers would have to license the Software directly from HKC in order to continue using it.

116.    Naus, Husain and Nguyen actively and knowingly caused ConfigAir's counsel to falsely represent to third parties that the code underlying the Software is ConfigAir's "property."

117.    Naus, Husain and Nguyen caused ConfigAir's counsel to make the statement with the intention of inducing the third-party users not to license the Software directly from HKC, thus depriving HKC of licensing revenue.

118.    ConfigAir's representation constitutes a reckless indifference to HKC's rights and an intentional and wanton violation of those rights.

119.    Upon information and belief, as a result of the statement, the third-party users have continued to use the Software without HKC's authorization and have refused to pay HKC for their use of the Software.

120.    As a direct and proximate result of the conduct as hereinabove alleged, HKC has suffered economic damages in an amount to be proven at trial, but which HKC is informed and believes, and on that basis alleges, exceeds the jurisdictional minimum of this Court.

121.    Furthermore, upon information and belief, the conduct as hereinabove alleged was not only knowingly false, but was also wanton and malicious.  Accordingly, HKC is also entitled to an award of punitive damages.

### Count VII
### (CUTPA-Against ConfigAir, Naus, Husain and Nguyen)

122.    HKC repeats, realleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs of this Complaint.

123.    ConfigAir's acts of knowingly and falsely representing that it owns the Software offend public policy as has been established by the common law of the State of Connecticut, including, without limitation, the common law of slander of title/commercial disparagement, fraudulent misrepresentation and tortious interference with business expectancy of the State of Connecticut, and therefore constitute unfair or deceptive acts or practices in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. 42-110, et seq. ("CUTPA").

124.    ConfigAir's acts of knowingly and falsely representing that it owns the Software constitute an immoral, unethical, oppressive, and unscrupulous business practice, and therefore constitute unfair or deceptive acts or practices in violation of CUTPA.

125.    ConfigAir's acts of knowingly and falsely representing that it owns the Software has directly and proximately caused HKC to suffer substantial and foreseeable, ascertainable harm, including, but not limited to, lost licensing revenues which HKC would have realized from the exploitation of its rights in and to the Software but for ConfigAir's aforementioned conduct, and therefore constitute unfair or deceptive acts or practices in violation of CUTPA.

126.    Furthermore, upon information and belief, ConfigAir's acts of knowingly and falsely representing that owns the Software constitute intentional and wanton violations of HKC's rights in and to the Software and exhibit a reckless indifference to HKC's aforementioned rights.  Accordingly, HKC is entitled to an award of punitive damages pursuant to Conn. Gen. Stat. 42-110g(a).

127.    HKC is entitled to recover its costs and reasonable attorneys' fees incurred in pursuing this matter pursuant to Conn. Gen. Stat. 42-110g(d).

**PRAYER FOR RELIEF**

Wherefore, HKC prays for judgment against all Defendants as follows:

1.      On Counts I and II:

    a.   Defendants, and each of them, their officers, agents, servants, employees and attorneys, and all others acting in concert or participation with them, including any and all third parties who receive actual notice of the Order or Judgment by any method:

        i.   be permanently enjoined from copying, publicly displaying, distributing, licensing, selling, or creating derivative works based on, the CAL computer program, or any computer program substantially similar thereto;

        ii.   be permanently enjoined from copying, publicly displaying, distributing, licensing, selling, or creating derivative works based on, the CALServer computer program, or any computer program substantially similar thereto;

        iii.   be permanently enjoined from copying, publicly displaying, distributing, licensing, selling, or creating derivative works based on, the CALVisualization computer program, or any computer program substantially similar thereto;

        iv.   be permanently enjoined from copying, publicly displaying, distributing, licensing, selling, or creating derivative works based on, the CALUi computer program, or any computer program substantially similar thereto;

    b.   Defendants, and each of them, be ordered to send written notice, approved by the Court, to each licensee, distributor, or any other entity who received an unauthorized copy of the CAL, CALServer, CALVisualization and/or CALUi computer programs, or any program substantially similar thereto, with a copy of each such written notice to be furnished to HKC:

19

   i. requesting that the recipient surrender to HKC all unauthorized computer code in its possession, custody or control; and

   ii. advising the recipient that pursuant to the judgment of this Court, Defendants have been enjoined from copying, publicly displaying, distributing, licensing, selling, or creating derivative works based on, the CAL, CALServer, CALVisualization and CALUi computer programs;

 c. Defendants, and each of them, destroy all infringing computer code in its possession, custody or control, pursuant to 17 U.S.C. §503;

 d. Defendants, and each of them, remove all infringing computer programs from any website that it controls;

 e. Defendants, and each of them, pay to HKC all profits realized by them as a result of their unlawful infringing acts as complained of herein, the exact sum to be proven at the time of trial, pursuant to 17 U.S.C. §504;

 f. Defendants, and each of them, compensate HKC for all actual damages suffered as a result of Defendants' unlawful infringing acts complained of herein, the exact sum to be proven at the time of trial, pursuant to 17 U.S.C. §504;

 g. Defendants, and each of them, file with the Court, and serve upon HKC's counsel, within thirty (30) days after the entry of the judgment, a report under oath setting forth in detail the manner in which Defendants have complied with such judgment;

2. On Count III, for compensatory damages according to proof but which HKC is informed and believes, and on that basis alleges, exceed the jurisdictional requirements of this Court, as well as punitive damages;

3.      On Count IV, for compensatory damages according to proof but which HKC is informed and believes, and on that basis alleges, exceed the jurisdictional requirements of this Court, as well as punitive damages;

4.      On Count V, for compensatory damages according to proof but which HKC is informed and believes, and on that basis alleges, exceed the jurisdictional requirements of this Court, as well as punitive damages;

5.      On Count VI, for compensatory damages according to proof but which HKC is informed and believes, and on that basis alleges, exceed the jurisdictional requirements of this Court, as well as punitive damages;

6.      On Count VII, for compensatory damages according to proof but which HKC is informed and believes, and on that basis alleges, exceed the jurisdictional requirements of this Court, as well as punitive damages and attorneys' fees as provided for by law;

7.      On all Counts,

  a.      For Plaintiff's costs, expenses and reasonable attorneys' fees incurred in this action;

  b.      For pre-judgment interest as allowed by law; and

  c.      For such other and further relief as the Court deems just and proper.


Dated: August 14, 2018

         Respectfully submitted,


         By  /s/ Jessica S. Rutherford_____
         Jessica S. Rutherford
         ct27273
         jrutherford@24iplg.com
         Edmund J. Ferdinand, III
         ct21287
         jferdinand@24iplg.com

FERDINAND IP, LLC
1221 Post Road East, Suite 302
Westport, Connecticut 06880
Telephone: (203) 557-4224
Facsimile: (203) 905-6747

*Attorneys for Plaintiff,*
*Henry Kurz Consulting GmbH*

## JURY DEMAND

Plaintiff, Henry Kurz Consulting GmbH, hereby demands a trial by jury of all issues so triable in this case.

Dated: August 14, 2018

Respectfully submitted,

By _/s/ Jessica S. Rutherford_____
Jessica S. Rutherford
ct27273
jrutherford@24iplg.com
Edmund J. Ferdinand, III
ct21287
jferdinand@24iplg.com
FERDINAND IP, LLC
1221 Post Road East, Suite 302
Westport, Connecticut 06880
Telephone: (203) 557-4224
Facsimile: (203) 905-6747

*Attorneys for Plaintiff,*
*Henry Kurz Consulting GmbH*